317-0020 Sloan Biotechnology Laboratories, Appellant by Lake Alster v. Advanced Biomedical Incorporated, Appellee by Debra Heintz. May it please the Court, Counsel, Your Honors, Lane Alster on behalf of the Appellant Sloan Biotechnologies. I want to give a brief factional background of this case just to price according to what happened before filing of the complaint. This whole dispute arises out of a CRADA or Cooperative Research and Development Agreement that was entered in between a company called and the U.S. Department of Agriculture's Research Branch, the ARC. That's in 2009 that that was entered. So what happened after that was that Sloan began to develop what is a hand sanitizing product that can be used in banking or medical field. So that was the idea of making a hand sanitizer, right? So fast forward to 2014 and the 2014 NDA or Non-Disclosure Agreement is entered into between Cabatco, Sloan, and Hygiene. Then in 2015, another agreement was entered into, the Exclusive Manufacturing Agreement between Sloan and ABI, pursuant to which Sloan had the exclusive right to manufacture the product. Immediately thereafter, a couple months thereafter, there was a new non-disclosure agreement entered into between ABI and Sloan. At that point in time, ABI began to, obviously, not ABI, Sloan began to try to make the product for purposes of manufacture. And that gets us to a letter that was sent from counsel from ABI, Mitchell Yeltsky, to the president of Sloan, Don Stevens, pursuant to which there was an assertion that Sloan was in breach of the Exclusive Manufacturing Agreement. The letter also goes on to discuss the idea that Sloan is in control of certain confidential information that's subject to the NDAs. In the letter, there's no assertion in the letter that Sloan has breached any of the non-disclosure agreements. Immediately thereafter, Sloan filed a complaint, I think it was in June of 2016, in Peoria County. Now, asking for declaratory relief, asserting that there was this letter which was attached to the complaint, asserting that Sloan was in breach of the manufacturing agreement, and that anything it would do going forward would be a continuous breach of the manufacturing agreement. So that gets us to where we are today. A motion to dismiss and a motion to transfer were filed by the defendant, appellee ABI, in which they asked the trial court to either transfer the case to Cuyahoga County, Ohio, pursuant to some purported forum selection clauses in the NDAs, and or dismiss the case in Illinois so that ABIs could have their case in Ohio. I believe they filed right after the plaintiff, Sloan, had filed their case in Illinois. The court originally entered into order transferring venue to Cuyahoga County on the basis of the NDA agreements that are at issue. The court did nothing with the motion to dismiss that had been under the assertion that the court doesn't have any right to transfer venue interstate, but only interstate. A motion for reconsideration was eventually filed. The trial court judge ruled that she had made an error in transferring venue to Ohio, that she didn't have the authority to do that under Illinois state law, and instead dismissed the case. So she recalled the case in Illinois, dismissed the case, and of course we filed a notice of appeal today based on the assertion that there is no valid forum selection clause which requires the issues at hand to be heard in front of the court in Cuyahoga County. As I've stated, there are three main agreements that are at issue here. The first agreement is really the main agreement that the letter from Mr. Yelsky asserted that Sloan was in breach of. That's the exclusive manufacturing agreement. Now, in the complaint, what Sloan is doing is making the product. So the language of the manufacturing agreement contains a couple of applicable provisions. Paragraph 16 of the manufacturing agreement, titled Governing Law, states that the agreement was made in Peoria, Illinois, and that Illinois law is the appropriate law to enforce. Paragraph 12, titled Confidentiality. That provision states that the parties further acknowledge and agree that the information contained in this agreement, the manufacturing agreement, in all exhibits hereto is considered confidential information, as such terms defined in the 2014 NDA, and it is fully set forth in this agreement. There is no forum selection clause in the manufacturing agreement. None. Zero. The only assertion that ABI makes is that because there's a mention in the confidentiality provision of the 2014 NDA, which was later replaced by the 2015 NDA, which contains some information, somehow this applies in totality to the manufacturing agreement. This is not the case. First of all, with respect to forum selection clauses, the law in Ohio and in Illinois requires that they be express. There is no language in the manufacturing agreement that purports in any way to under some kind of forum selection clause provision. Therefore, on that ground alone, the trial court's decision should be reversed. The case should be remanded. Additionally, even if you assume that somehow the NDAs apply or can be applied over the whole scope of the manufacturing agreement, the language of the two provisions in the NDAs does not relate to the issues that Sloan has raised in the complaint. If you look at the language of these two provisions, there's paragraph 11 and paragraph 12. They're the same in both the 2014 NDA and the 2015 NDA. Paragraph 11, and I dispute this at all, is permissive in its nature. States governing law. The validity, performance, construction, and effect of the agreement will be governed by the laws of Ohio and the federal laws of the United States. With regards to conflicts of law, moving further, it says this agreement, meaning the NDA agreement, may be enforced in the courts sitting in Cuyahoga County, Ohio and in the other courts and before other bodies to the excluding parties' rights. Now, first of all, this language is related to protection of confidential information. It isn't related to breaches of contract under the manufacturing agreement. It has nothing to do with the relationship between the parties in the manufacturing agreement. It's very clearly is permissive, so you can file the lawsuit wherever you want, including Cuyahoga County, but obviously not limited there, too. The second provision, paragraph 12, entitled Equitable Remedies, states as follows. The parties recognize that serious injury could result in the disclosing party and its business if the receiving party breaches its obligations under this agreement. And again, this agreement being in the NDA. Therefore, receiving parties agree that the disclosing party will be entitled to a restraining order, injunction, or other equitable relief, the scope and extent of which shall be determined by a court of competent jurisdiction sitting in Cuyahoga County, Ohio, if receiving party breaches its equity. Now, these two paragraphs sit next to each other in a document, one of which says you can file a lawsuit anywhere. The other one says effectively you can file for equitable remedies, or you can only file for equitable remedies related to the confidential information that's being provided pursuant to the NDA in Cuyahoga County. When interpreting the nature in which these provisions apply, when you're looking at an action for declaratory relief under the manufacturing agreement, where we're trying to assert we are not in breach and are not going to be in continuous breach of the manufacturing agreement, we have to look at how we could possibly be bound by the language contained in the NDA that only relates to protection of confidential information. And frankly, there's just no reason that that would apply and that Sloan would be bound to try a case arising out of a breach of a manufacturing agreement in Cuyahoga County, Ohio. Additionally, when we're just looking at whether the NDAs, if it was a lawsuit about a breach of the NDAs, whether Sloan would be prohibited from bringing this action in Peoria, Illinois. And the answer to that is that it can't be prohibited from bringing the action in Illinois. Frankly, paragraph 11 of the NDA allows for any court to have jurisdiction to enforce rights disclosing party in Illinois. Yes, it mentions Cuyahoga County, but it says may. It's a permissive provision. In that case, if the is subject to the NDAs, by filing a lawsuit in Illinois to protect it, even if it's to protect it on behalf of the disclosing party, it has the right to do so. And the disclosing party is ABI. So the permissive provision clearly allows Sloan to bring its declaratory judgment count in Peoria County, Illinois. Now, the defendant, I'm sorry, the defendant appellee of ABI has cited to a couple of cases in its brief in which it asserts that when there's a mandatory form selection clause provision and there's a permissive form selection clause provision, you have to, the courts have found in other cases that the permissive provision would take precedent and should be applied. Those cases do not relate to the same situation as we have here. Those are where there are two separate agreements that could contain competing or contradictory forum clause or forum selection clause agreements. For instance, one agreement may say you have a permissive forum selection clause, and then an entirely separate agreement would say we have a mandatory provision. And the courts there say, well, we'll go with the mandatory in the second agreement. Here we have two paragraphs that are next to each other in every way. This contract was not drafted by Sloan. It was drafted by ABI. When reading these provisions together, they make no sense other than that Sloan can file the lawsuit wherever they want to. And again, they don't relate at all to the underlying issue, which is the manufacturing agreement is the manufacturing agreement, there's absolutely no forum selection clause in any kind of incorporation argument that the entirety of the NDA applies across the entirety of the manufacturing agreement is not supported by law and would lead to unfair results. For instance, the manufacturing agreement is an Illinois choice of law provision. The NDA is having an Ohio choice of law provision. Those are competing. If you try to incorporate them on the top of each other, you're going to have mass confusion. It wouldn't make any sense. The narrowly tailored discussion of the NDA and the manufacturing agreement is only focused on issues of confidential information provided to Sloan by ABI, and it should only be read to apply in that manner, not to apply to the entirety of Sloan's rights under the manufacturing agreement. And finally, even if there is a determination that there's a mandatory forum selection clause that would apply in this case to the entirety of Sloan's complaint for declaratory relief, the third prong of the test provided for capital, in the Ohio case, allows for courts to not apply mandatory enforcement agreements when the enforcement thereof would be unreasonable and unjust. Here, there is not a single thing that has happened in Cuyahoga County. Everything has happened in Illinois. All the equipment related to the project, the government employees that work for ARS are in Peoria, Illinois. The president of ABI does not reside in Cuyahoga County. It's a Columbus company. The only thing that touches Cuyahoga County appears to be a lawyer, Mr. Yeltsin, that was involved in drafting possibly the agreements. Every single piece of information, every single witness, other than the president of ABI, is in Peoria, Illinois. And to schlep numerous witnesses from the USDA, who are not parties to this lawsuit, to Cuyahoga County for a trial would frankly be very difficult, including the subpoena power of Ohio to bring those employees to Ohio and propel them to testify related to this matter. For those reasons, the appellant, Sloan, would request this court reverse the decision of the trial court and remand it for hearing on such matters. Thank you. Counsel, you may proceed. Your Honors, good afternoon. May it please the court and counsel, my name is Debbie Michelson, Debra Michelson. I'm here from Cleveland, Ohio, and I'm very pleased to be here on behalf of Advanced Biomedical Inc., which I may refer to as ABI just because it's a very long name. I'm especially pleased to be here under the auspices of these orators, and Abraham Lincoln happens to be a childhood peer of mine, so I'm really excited to be here and I thank you for your time. My point here today, what I hope to do is jump in and address simply the points that were made on, in the reply brief, which of course because of the briefing structure I have not had a previous opportunity to address, and of course any questions that the panel may have for me. I will tell you that the statement during my opponent's oral argument that the only allegations in Sloan's complaint was that the exclusive manufacturing agreement has not been breached is actually inaccurate. The complaint, their own complaint, refers specifically to the nondisclosure agreements as well, both the 2014 and the 2015, and Sloan has sought a nondisclosure agreement. The other misstatement, and I, you know, invite the court and the panel to read the nondisclosure agreements, is that they only relate to the handling of what is defined as confidential information, also not accurate. There are many, many provisions in that agreement, and it is a mischaracterization of those agreements to represent otherwise. I will jump in and first address the waiver argument. We made an argument in our appeal brief that Sloan has waived the right to, or forfeited, the right to object to the trial court's dismissal of its single count declaratory judgment complaint because it actually asked the trial court to grant that relief. Now, in its reply brief, actually Sloan first asked the trial court to transfer the case. That's at Record Site 31. Then later, after the court had already granted that transfer order, Sloan came back trying to get the court to instead dismiss its own complaint. There are a lot of reasons why it was too late, but I won't go there. The upshot is that the trial judge did exactly what Sloan asked her to do. She I will direct the court's attention to the Stevens v. Taylor Illinois Supreme Court case in which the Supreme Court basically said that the plaintiff waived the right to appeal, to appeal the granting of the alternative relief that the plaintiff requested. In that case, the plaintiff asked the court to either vacate the judgment or grant a new trial. The court granted a new trial. Later, the plaintiff wanted to appeal the granting of a new trial, and the appeal court said, uh-uh, no way, and the Supreme Court said, no way, and affirmed the, or denied the appeal based on the invited error doctrine. In that Stevens v. Taylor case, the purpose of the alternative relief was to gain review of an otherwise unreviewable order, which is very similar to what we have in this case. They have stated that their purpose in going back to the trial judge and asking for dismissal in the alternative was so that they could gain appellate review of what they said, I believe incorrectly, was an otherwise unreviewable transfer order. The Illinois Supreme Court in Stevens said, immaterial. The plaintiff's motivation, or the party's motivation in asking for that alternative relief is immaterial, and if you ask for it and you get it, you can't appeal it. The law in Ohio, by the way, is not dissimilar under the invited error doctrine. A party cannot appeal an error that is induced or asked the trial court to make, and cautions that the appellate court should be especially cautious when a party makes a strategic decision that it later comes to regret. That's in Blair v. McDonough, 2008, Ohio, 3698. That's exactly what we have here. I will also state that the party's intent, what's the party's contract interpretation, as you well know, is all about what's the party's intent. And if the language in the contract is clear and unambiguous, then you only look at the four corners, the trial judge only looks at the four corners, and then makes a decision as to the intent based on that language, and then if it's appealed, it's de novo review. But if the party's intent cannot, it's ambiguous, the contract's ambiguous, and the party's intent, in this case, for instance, whether the form selection clause in paragraph 12 of the NDAs, which were incorporated fully into the exclusive manufacturing agreement, were the ambiguous as to whether the party's intended for there to be exclusive jurisdiction in the Cuyahoga County courts, then the trial court properly can consider extrinsic evidence to determine the party's intent, and then give effect to it. In that case, the trial court's decision about the party's intent is entitled to extremely deferential review. I think under Illinois law, it has to be against the manifest weight of the evidence for this court to set it aside. Let me ask a question. Does it make any sense to you for parties to say, in the manufacturing agreement, exclusive jurisdiction in Cuyahoga County, in Cleveland, Ohio, where that court is to apply Illinois law? So, Your Honor, the answer is yes, it does make sense, because parties can contract to a particular jurisdiction, whether or not that's the law of the state. That's one part. The second part is, the exclusive manufacturing agreement is governed by Illinois law. However, the NDAs, the nondisclosure agreements, are governed by Ohio law, and so you kind of have... I'm just saying, if we look at the manufacturing agreement, and I used to be a real lawyer, and I can't imagine two lawyers sitting, a lawyer sitting down and saying, let's have an agreement where the exclusive jurisdiction is in State A, but the law of State B will apply. I can't think of any reason any rational lawyer would do that. So, I don't know what the parties were thinking when they agreed to those things, when they entered those contracts in 2014 and 15, but they did. And because they did, and because the court's job is to give effect to the parties' expressed intentions as set forth in the actual agreements, and parties can agree to that, then, you know, they did. They did. The nondisclosure agreements are incorporated by express reference, all of it, fully incorporated by reference, into the exclusive manufacturing agreement. The fact that the EMA, I'm just using abbreviations, I hope that doesn't bother anybody, the manufacturing agreement may be governed, its interpretation may be governed by Illinois law, is not the critical issue at all. That agreement incorporated by reference the entirety of the nondisclosure agreement, which specifically talked about Cuyahoga County, Cuyahoga County, Cuyahoga County, as to where you must litigate briefs of contract-related claims. You know, you mentioned also that the NDAs referred to things other than disclosure, and are there any sections of it that you can point to that refer to manufacturing? It refers to, it is actually about this joint project that the parties were either undertaking or in the middle of undertaking and how they were going to handle confidential information and how they were going to handle their ongoing business relationship. And actually, if you look at, so I'm just going to flip to it, because you've asked me a specific question I haven't answered. And you're asking about the nondisclosure agreements. Yes, because you at least, I heard you suggest that the nondisclosure agreements also dealt with the manufacturing. No, sir, I did not mean to imply that it also deals with manufacturing. What I meant to say, if I didn't say it clearly before, is it relates to issues in addition to the handling of confidential information, including, for instance, who owns the IP, the intellectual property, what the party's relationship is, that it's a binding agreement governing law, what kind of remedies are available, for instance. And by the way, yeah, these are on the nondisclosure agreement. It has non-solicitation provisions as well, and I'm referring to paragraph 15, which you can find on the record page C20. And there are some miscellaneous provisions as well, including that the agreements are not to be construed against the drafter, and that headings and titles and captions should not be given any weight in the interpretation of agreements. So it is not a fair characterization that it is only limited to, the NDAs are only limited to confidential information. The other thing that's important, where is this? Yes, is an incorporation provision in the exclusive manufacturing agreement specifically says that that's under paragraph 12, that's at page C12 in the record. It has several sentences, and only the last sentence is the incorporation provision, and it says the NDA remains in full force in effect and is hereby incorporated by reference as if fully set forth in this agreement. And because the beginning of that paragraph dealt with confidential information, there would have been no need to have this last incorporation provision incorporating the totality of the 2014 NDA if it was only limited to confidentiality things. The other thing, I hope I'm answering your question, I'm really trying to. Two minutes. Oh my goodness. Sloan's arguments that it should be construed against the drafter are untrue. One, the agreements say no. Two, Allstate v. Dolman, the case that they cite, says nope, don't do it, you can't do it. And by the way, there is no record evidence as to who drafted those provisions, none. And they all point to Annie. This is imperative. The paragraph 11 and the paragraph 12 clauses, the paragraph 11 clause in the NDA says, the paragraph 11 clause is limited to enforcement actions to enforce the rights of the disclosing party. There is no question that a Declaratory Judgment Action brought by Sloan against Advanced Biomedical is not looking to enforce ABI's rights. That's one. Two, so this is how you can harmonize and reconcile the two. The paragraph 11 permissive clause by which Sloan consented to the jurisdiction of the Ohio County Courts, that is not even relevant. What's relevant here is paragraph 12. And paragraph 12 uses the word shall. I hear my opponents say there's no mandatory language in there. Well, the other is. It's shall. And shall means shall, and the Ohio Courts and I'm pretty sure the Illinois Courts hold that shall means shall. I want to jump through. Complaints, blah, blah, blah. Additional reasons to affirm the dismissal, as this court well knows, you can affirm. Because the only issue in front of the court is, should you affirm the trial court's dismissal of the complaint? And you can for multiple reasons, including two that we fully agree. One, there's literally no factual specific allegations in the complaint that would support a declaratory judgment action. Literally not a one. And the preclusory statement that Sloan makes, we comply with our contractual allegations as a matter of law, is insufficient. That's one. Two, there's no issue. This is a declaration. They sought a declaration for basically saying, yeah, the way, what you did is not a breach. That is directly within the doctrine of non-liability for past conduct. And this idea that they asked in their complaint for going forward, we won't be in breach if we keep doing the same thing that you already said we already did. There's no authority that that extends it out and takes it outside the realm of the doctrine of liability for, the doctrine of non-liability for past conduct. And by the way, how do we know? Because Mitch Yeltsin's letter said to them, say, hey, you're in breach. They already had done the acts that put them in breach. Well, says you, and they say, no, we didn't. And that's what all this litigation is about at the end of the day. Well, Your Honor, so they can say, no, we didn't. But we're for allegation that there is anything other than past conduct that is the gravamon or the basis of their purported supplies for a judgment action. Illinois Supreme Court is really clear that if the acts that are complained of have already occurred, and if the only thing left, and the breach of contract claim has already accrued, then it's taken out of the realm of declaratory judgment act. And it is no longer part of that. You can't get declaratory judgment. I like to think of it as, and I know I'm talking fast, there's like this sweet spot for the declaratory judgment act. And it's before there's a dispute about something, and it's before the parties act, because once they act, bam, it's too late. You can't go for declaratory judgment. The proper remedy is for the alleged non-breaching party to go for breach of contract, et cetera, and that's what happens. Failure to state a claim, nothing Sloan says can change the fact that the acts constituting the breach already occurred. They, in a throwaway, in their last page of their brief, they asked for remand. And I'm going to tell you why very quickly why that is not a proper request. One, they never asked for it before, ever. They didn't ask the Supreme Court for it, the trial court for it. Two, it will only cause further delay and unnecessary expense, and further delay prosecution of the substance of merits of the case. Three, any amendment would be futile for the reasons I just said. Nothing that they say can change the fact that they acted already, and that's giving the breach of contract claim already approved when they filed their D.J. action. Finally, Your Honors, if amendments could have cured the pleading defect in their complaint, then the dismissal order isn't even a final appealable order. And I direct your attention to your own third district decision, Crouse v. USA DocuFinish, 2015, ILF, 3rd, 130585. I know I've jumped through so many things, there's always so much to talk about. I thank you for your time and attention. I ask the court for all of these reasons, any of them or all of them, to affirm the trial court's order so that we can go and mitigate a substance of merits of this case that has been sitting in procedural limbo for 16, 18 months. And thank you kindly for your time and attention. Counsel, you may proceed. Thank you, Your Honors. I want to briefly reply to a couple of things. First of all, the assertion that we somehow waived our right by agreeing to dismissal of this case is just completely absurd. The court says she wanted an order drafted transferring the case to Cuyahoga County. We drafted the order as the scrivener, then she transferred it. We told the court we thought she should dismiss it because she didn't have the right to transfer it. We argued in our motion for reconsideration that she shouldn't dismiss it or transfer it. She denied our request to not dismiss it, but granted our request to not transfer it, so asked us to draft an order on her behalf as the scrivener dismissing the case. Well, I drafted an order putting down what the trial court wanted me to put down, dismissing the case and making the final order. So that's why we're here. The idea that the party waived and the drafting of the order is absurd. In fact, we had to have a hearing because the court wanted an order that nobody could agree upon. So that argument doesn't hold any weight. Additionally, with respect to this idea that the non-disclosure agreements deal with more than confidentiality agreements, I don't see that there's any merit to that argument. The only provision in those NDAs that really states otherwise is the miscellaneous provision that opposing counsel referred to, and that's just a boilerplate provision. There was never a real ruling on the motion to dismiss, was there? No. The motion to dismiss filed by ABI and the motion to transfer – well, actually, I'm sorry. There's just the motion to dismiss dealt with two matters that I can recall. First of all was this issue related to form selection. Secondly was the issue related to declaratory relief and that we failed to state a cause of action. There was never any ruling by the trial court on the issue of whether there was a failure to state a cause of action. The only thing the trial court said was, I don't have the right to hear this on the grounds of there being a valid form selection clause in the NDA that somehow covers the scope of the entirety of the manufacturing agreement. So the court never talked about that. The first time that the argument – I mean, they've argued on appeal, obviously, in their response brief that somehow the court should have dismissed it because it failed to state a cause of action for declaratory relief. Frankly, that's why I'm asking that. I don't believe it's true. I think that there's future breaches that they're basically asserting that our ongoing conduct constitutes a breach of conduct. They have never filed an action to the point that we filed our complaint.  We stated – we filed declaratory – we say our actions are not in breach of this contract and are not breaches going forward. And that was the basis of our declaratory relief judgment. So – Let me ask you this about the last point counsel made or one of the last points. Is the – if you've got an agreement with somebody to do X form and then they write you a letter and say, you're in breach of the contract, you're done. Let's wrap it up. And can you file a declaratory judgment action and say, no, I'm not in breach of the – they're wrong, I'm not in breach of the contract and I get to keep manufacturing it? Or is the remedy to go in and say, well, they breached the contract by improperly terminating our – you know, they alleged a breach that never occurred. They terminated the contract. Ergo, we're going to sue them for damages. But can a court force – can any court force any company to continue having so-and-so, you know, whatever company, manufacture their product? Well, Your Honor, I think the answer to that question is that the sending of a letter creates basically the controversy. The case of controversy. They're saying there's a breach, you know, based on the fact that the product isn't being properly manufactured. And frankly, in this case, when you look at the merits, obviously they were just at the point of starting the manufacturing of the product. However, they didn't file anything or, you know, they basically said, we think this is a breach and hold on to all your documents. And we said, no, and we have the right to continue to manufacture this because we have the exclusive manufacturer of this product that they have no ability to manufacture because we're the only person that manufactures it. So we asked for declaratory relief regarding breaches that haven't occurred, right? Saying, going forward, we are doing what we are required to do pursuant to this agreement. We did not assert that they were in breach of the contract. We were asserting that we have the right, we have a contract. They haven't breached it. We haven't breached it. That was the basis of our declaratory relief count. So I think that it is appropriate, just when they put you on notice that they think there's a case in controversy related to this, you know, issue, that we go and ask the court to determine whether there is a problematic, you know, relationship related to the making of this product. So I think that that's appropriate, the form of relief to request from the trial court, and that if there needs to be some amendment to the pleading in order to properly allege a certain count, you know, in future events, that's something that would have been allowed by the trial court had they ruled on it. We would have had a chance to amend our complaint. It surely wouldn't require the court to have, you know, obviously the court would have given us an opportunity to leave to replead. I think that if there's a problem there, the court would, again, give us an opportunity to replead on that issue, and we could go forward in that manner. It would be appropriate for this court to remand on that ground. With respect to other issues, the assertion in the paragraph that the manufacturing agreement in any way, in paragraph 12, attempts to or expresses somehow a forum selection clause is really without merit, it's, first of all, within paragraph 12 alone, called confidential information. The NDAs are about confidential information. So if there could be any intent determined based on reading the manufacturing agreement, it is that the NDAs and their provisions on confidential information were being incorporated into paragraph 12 related to confidential information because they provide much more details to what confidential information includes and how it is treated. And for those reasons, Your Honors, if you have no other questions, I would request that the order by the trial court on December 27, 2016, be reversed, and this matter be remanded to the trial court. Thank you. Thank you. We'll take this matter under advisement.